# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY ANN RODRIGUEZ,<br>　　　　Plaintiff,<br>　　v.<br>NANCY A. BERRYHILL,<br>　　　　Defendant. | NO. SACV 17-610-KS<br><br>MEMORANDUM OPINION AND ORDER |

## INTRODUCTION

Plaintiff filed a Complaint on April 4, 2017, seeking review of the denial of her application for Supplemental Security Income ("SSI"). (Dkt. No. 1.) On May 19, 2017, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11, 12, 13.) On June 12, 2018, the parties filed a Joint Stipulation ("Joint Stip.") (Dkt. No. 27), in which plaintiff seeks an order reversing the Commissioner's decision and either ordering the payment of benefits or remanding the matter for further administrative proceedings (Joint Stip. at 25). The Commissioner requests that the ALJ's decision be affirmed or remanded for further proceedings. (*See* Joint Stip. at 26.) The Court has taken the matter under submission without oral argument.

1

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On May 2, 2013, Plaintiff, who was born on January 20, 1970, filed an application for SSI.[1] (*See* Joint Stip. at 2; Administrative Record ("AR") 218.) Plaintiff alleged disability commencing September 1, 2005, due to: "bipolar schizophrenia." (AR 218, 262.) Plaintiff had applied for disability insurance benefits on at least three prior occasions. (*See* AR 257-58) (listing applications terminated in August 30, 2007, March 2009, and May 2011).

Plaintiff indicated that she had not performed any work in the 15 years prior to her alleged onset date. (AR 263; *see also* AR 44.) The Commissioner denied Plaintiff's application initially and on reconsideration. (AR 110, 120.) On January 10, 2014, Plaintiff requested a hearing. (AR 138.) On June 18, 2015 and September 17, 2015, Administrative Law Judge Sharilyn Hopson ("ALJ") held hearings. (AR 60, 77.) Plaintiff, who was represented by counsel, a medical expert, David Glassmire, M.D., and a vocational expert ("VE"), David A. Rinehart, testified. (AR 58-76, 77-98.) On October 16, 2015, the ALJ issued an unfavorable decision, denying Plaintiff's application for SSI. (AR 42-53.) On February 3, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-7.)

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of April 30, 2013. (AR 44.) The ALJ further found that Plaintiff had the following severe impairments: mood disorder; unspecified psychotic disorder; and post-traumatic stress disorder ("PTSD"). (AR 44.) The ALJ also found that Plaintiff had the medically determinable impairments of obesity, substance abuse, and alcohol dependence. (AR 44-45.) The ALJ concluded that Plaintiff did not have an impairment or combination of

---

[1] Plaintiff was 35 years old on the alleged onset date and thus met the agency's definition of a younger person. *See* 20 C.F.R. § 416.963(c).

impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526), including Listings 12.04 and 12.06. (AR 45-46.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work as follows:

> [Plaintiff] is limited to simple tasks with a reasoning level of three or less; she cannot perform jobs requiring hypervigilance; she cannot perform jobs requiring public interaction; and she can occasionally tolerate teamwork.

(AR 46.)

The ALJ determined that Plaintiff had no past relevant work (AR 52) but there are jobs that exist in significant numbers in the national economy that she would be able to perform, including the representative occupations of hand packager (DOT 920.587-018), floor waxer (DOT 381.687-034), and garment sorter (DOT 222.687-014). (AR 52-53.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset through the date of the ALJ's decision. (*Id.* 53.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the

ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

**DISCUSSION**

I. <u>**Issues Presented**</u>

There are two issues in dispute: (1) whether the ALJ properly considered the opinion of Plaintiff's treating psychiatrist, Steven Johnson, M.D (Joint Stip. at 4); and (2) whether the ALJ articulated legally sufficient reasons for finding Plaintiff's statements about her

4

symptoms and limitations less than fully credible (Joint Stip. at 13).  The Court considers the merits of these issues in reverse order.

## II. The ALJ's Evaluation of Plaintiff's Credibility

### A. Plaintiff's Statements

The parties dispute whether the ALJ properly determined that Plaintiff's statements about her symptoms and limitations were not fully credible.  At the June 18 and September 17, 2015 hearings, Plaintiff testified that, since she had stopped working, "her husband" took care of her.  (AR 63.)  Plaintiff later clarified that she did not have a husband and, rather, it was her "boyfriend" who took care of her.  (*Id.* at 82) ("I just call him my husband.").  She testified that she experiences auditory hallucinations but takes medications that quiet them a bit – "the voices" – "seem like they're way far away . . . they don't really bug me a lot, but I can hear them still."  (AR 91.)  She testified that she feels "spirits" going in and out of her body, which makes it hard for her to be still.  (AR 92.)  She testified that she "can't focus. Can't concentrate."  (AR 92.)  She testified that she had been compliant with her medications and treatment regimens "all [her] life."  (AR 93.)  She testified that she likes to watch suspense movies, like Mission Impossible.  (AR 94.)

In the Adult Function Report Plaintiff completed on June 18, 2013, Plaintiff stated that she "can't focus [or] get along with others" and is "very paranoid around people."  (AR 268.)  She stated that she was unable to work because of her "racing thoughts" and feeling "depressed all the time."  (AR 269.)  She stated that she needs reminders to take her medications and keep her appointments. (AR 270.)  She is able to prepare "frozen meals and sandwiches" but sometimes forgets to eat.  (AR 270.)  She is able to clean and do the laundry, but she needs reminders and these tasks can take her all day to complete.  (AR 270.) She is able to shop for groceries, clothes, and other things that she needs.  (AR 271.)  She

5

forgets sometimes to pay her bills. (AR 271.) She states that her hobbies are "cleaning," "some sports," and "watching TV," "because [she] can't really focus on anything too long." (AR 272.) She stated that she can finish what she starts, *e.g.*, a conversation, chores, reading, watching a movie, but it may take "a long time." (AR 273.)

### B. Applicable Law

An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015); *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (court must determine "whether the ALJ's adverse credibility finding . . . is supported by substantial evidence under the clear and convincing standard").

In weighing a plaintiff's credibility, the ALJ may consider many factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony . . . that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). However, "subjective pain testimony cannot be rejected on the *sole* ground that it is not fully corroborated by objective medical

evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added) (citation omitted).

**C. Applicable Law**

The ALJ found that, although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements about her symptoms and limitations were not credible to the extent that they were inconsistent with her assessment of Plaintiff's RFC. (AR 47, 48.) The ALJ explained that Plaintiff's activities of daily living are inconsistent with Plaintiff's testimony regarding her disability and demonstrate her capacity for work. (AR 47.) Plaintiff's ability to stay focused and complete a face-to-face interview in connection with her application for SSI – without hesitation or confusion – also weighed against the credibility of Plaintiff's allegations that she could not concentrate. (AR 47) (citing AR 259). Finally, the ALJ observed that the objective medical evidence is inconsistent with Plaintiff's testimony. (AR 48.)

**D. Discussion**

*1. Activities of Daily Living*

The ALJ's determination that Plaintiff's activities of daily living are inconsistent with her statements about her symptoms and limitations is a clear and convincing reason supported by substantial evidence in the record for finding her statements less than fully credible. A claimant's daily activities bear on her credibility if the level of activity is inconsistent with her claimed limitations. *See Reddick*, 157 F.3d at 722. Thus, an ALJ may rely on a plaintiff's daily activities to support an adverse credibility determination only when those activities either: "contradict [the plaintiff's] other testimony"; or "meet the threshold for transferable work skills" – that is, where the plaintiff "is able to spend a substantial part

of his or her day performing household chores or other activities that are transferable to a work setting." *Orn*, 495 F.3d at 639; *Smolen v. Chater*, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996).

Plaintiff's activities of daily living are inconsistent with her statements about her inability to focus. Although she asserts that she cannot work because, *inter alia*, she cannot concentrate, she testified that she frequently watches suspense movies, like Mission Impossible (AR 94), movies that require viewers to concentrate for approximately two hours and follow a complex plot. Further, going into the community to shop for clothing and groceries requires a greater degree of concentration than what she has alleged. In order to effectively shop for groceries, Plaintiff must have the ability to identify what items she needs, go to a store, remember the items she needed, locate them among hundreds of other products, purchase them using currency or electronic payment means, and bring them home. Accordingly, the ALJ rightly determined that, to the extent Plaintiff alleges that her concentration deficits prohibit her from performing even "simple tasks with a reasoning level of three or less"[2] (*see* AR 46), Plaintiff's self-reported activities of daily living render her allegations less than fully credible.

### 2. *Plaintiff's Demeanor At The Interview*

The ALJ also cited Plaintiff's ability to participate in a face-to-face interview in connection with her SSI application as a reason for finding Plaintiff's statements about her symptoms less than fully credible. Plaintiff sat for an in-person interview in connection with her May 2, 2013 application for SSI, and her interviewer made the following observations: "[Plaintiff] was able to answer all questions with no hesitation or confusion. She sat through

---

[2] Reasoning Level 3 is defined as the ability to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] deal with problems involving several concrete variables in or from standardized situations." *See* DICTIONARY OF OCCUPATIONAL TITLES, Appendix C.

8

the whole interview with no problem . . . She was able to stay focus[ed] and complete the interview without assistance." (AR 259.)

Plaintiff argues that, in using Plaintiff's behavior and demeanor at the interview to support her adverse credibility determination, the ALJ is relying on improper "sit and squirm" jurisprudence. (Joint Stip. at 19.) However, observations of a claimant's appearance or demeanor are a permissible technique of credibility evaluation when they are consistent with the objective medical evidence. *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (holding that the ALJ's reliance on his observations of the Plaintiff at the hearing was proper because Plaintiff's appearance was inconsistent with medical evidence and other symptoms); *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985) (denial of benefits cannot be based on the ALJ's observation of a claimant when that claimant's statements are supported by objective evidence). As discussed below, the objective medical evidence, which was the third basis for the ALJ's adverse credibility determination, is also at odds with the severity of symptoms and limitations alleged. Accordingly, the ALJ did not err by considering the interviewer's observations.

### 3. Objective Medical Evidence

The treatment notes from Plaintiff's treating psychiatrist, Dr. Steven Johnson, show that Plaintiff responded positively to medication. On April 4, 2012, Dr. Johnson wrote that Plaintiff was having "good results" with Seroquel, Lexopro, and Abilify, noting that her mood swings, paranoid ideation, and auditory hallucinations were all much reduced. (AR 412.) Plaintiff experienced tremors as a medication side effect but "no other side effects." (AR 412.) Additionally, the Topamax had "much improved" Plaintiff's PTSD. (AR 412.) Plaintiff did report daily tearful episodes triggered by thinking about her loss of custody of her children. (AR 412.) Plaintiff stated that she would ask her primary care physician for reliable birth control. (AR 412.) Dr. Johnson described Plaintiff's insight and judgment as

"fair to good," and Plaintiff was able to remember three out of three words after four minutes. (AR 413.)

At her May 24, 2012 appointment with Dr. Johnson, Plaintiff reported that her auditory hallucinations "went away" with the bigger dose of Abilify and her nightmares were much improved with the Topamax – "she is sleeping well." (AR 409.) Plaintiff continued to experience no side effects from her medication except for a mild tremor. (AR 409.) Plaintiff stated that she lacked the money for reliable birth control, and Dr. Johnson referred her to Planned Parenthood, which was located in the same building as his office. (AR 409.) Dr. Johnson stated that Plaintiff's cognition seemed grossly intact and judgment and insight seemed fair to good. (AR 409.)

At her September 28, 2012 appointment, Plaintiff saw Nurse Practitioner Maria Dominguez-Wilson in Dr. Johnson's office and again denied auditory hallucinations and stated that she was "doing well." (AR 402.) Plaintiff stated that she still was not using a reliable form of birth control. (AR 402.) Nurse Dominguez-Wilson educated her about the importance of doing so, and Plaintiff stated that she would go to Planned Parenthood. (AR 402.) Nurse Dominguez-Wilson stated that Plaintiff's cognition and judgment appeared intact, but she questioned Plaintiff's insight because Plaintiff was "not following through with providers' recommendation [regarding birth control, *i.e.*] not using birth control despite her Hep C status and knowledge of possible harm to fetus with current meds if pregnancy occurs." (AR 402.)

At Plaintiff's January 9, 2013 appointment, Dr. Johnson noted that he had to discontinue Plaintiff's Topamax because "it was learned [Plaintiff] is not on birth control and has no intention of ever using birth control despite knowing the potential risks." (AR 398.) He noted that Plaintiff "has been telling us for months that her partner used condoms, but she now admits that was never true." (AR 398.) Plaintiff reported that she sometimes

skipped taking her Seroquel because she can sleep well without it. (AR 398.) Dr. Johnson stated that, given Plaintiff's "extremely extensive drug abuse history," "it is possible that her need for meds may be progressively decreasing with time the longer she is clean and sober, and it is possible that her need for psych meds might go away completely at some point. It might be appropriate to try to slowly wean her off her psych meds and see how she does. This is even more worthwhile since she refuses to use birth control and it is unknown whether her current meds can cause birth defects or not." (AR 399.)

At Plaintiff's March 28, 2013 appointment, Dr. Johnson stated that Plaintiff "continues to do very well on the current meds. She is very happy with them. No side effects. Good sleep." (AR 451.) Dr. Johnson wrote, "Regarding judgment and insight, even though she has not come to the same conclusion regarding the risks of these meds to an unborn fetus that I personally would come to, I have to admit that her position is not really illogical and that other reasonable people might come to the same conclusion." (AR 451.) He added that Plaintiff "seems competent to make decisions about her own care." (AR 451.)

At Plaintiff's May 22, 2013 appointment, Dr. Johnson reiterated that Plaintiff "continues to do very well on the current meds. She is very happy with them. No side effects. Good sleep." (AR 449.) Plaintiff again denied auditory hallucinations as well as paranoid ideation. (AR 449.) Dr. Johnson observed that Plaintiff's cognition seemed grossly intact and Plaintiff's judgment and insight seemed good. (AR 449.)

Finally, at Plaintiff's August 7, 2013 appointment, Dr. Johnson reiterated that Plaintiff "continues to do well on the current meds" and Plaintiff "wants to keep them the same." (AR 445.) She reported "no side effects" and "good sleep." (AR 445.) Plaintiff also reported applying for disability and claimed that "she is so restless that she is unable to stay in one place for long. For example, she wouldn't be able to sit in a chair for any length of time." (AR 445.) Plaintiff denied auditory hallucinations and paranoid ideation. (AR 445.)

Dr. Johnson observed fidgeting but described Plaintiff as coherent, her cognition as "grossly intact," and her judgment and insight as "good." (AR 445.)

Shortly thereafter, on August 17, 2013, Plaintiff was examined by Dr. Sohini P. Parikh, M.D., a board eligible psychiatrist. (AR 441.) Plaintiff reported to Dr. Parikh that she wakes up at 8:00am, takes care of personal grooming and hygiene, goes for a walk, uses a computer, goes shopping, and helps with household work. (AR 437.) Plaintiff reported getting along with family members, having close friends, and having no problems with neighbors. (AR 437.) Dr. Parikh observed that Plaintiff "can focus attention during this evaluation." (AR 437.) He described Plaintiff as "cooperative," "alert," "attentive," and "oriented." (AR 438.) He found "no evidence" that Plaintiff was responding to internal stimuli during the evaluation. (AR 439.) Plaintiff repeated four over six digits forward and two over three digits backwards. (AR 438.) Plaintiff's insight was average. (AR 439.) She recalled three out of three words in one minute and again in five minutes. (AR 439.) Dr. Parikh stated that Plaintiff's prognosis was "fair" and found that Plaintiff's concentration, persistence, and pace and her ability to understand, carry out, and remember simple instructions were "not impaired." (AR 440-41.)

In light of the foregoing, there is ample objective evidence from both Plaintiff's treating psychiatrist and his staff and the consulting psychiatrist, Dr. Parikh, that Plaintiff's symptoms were effectively controlled with medication, her concentration was not more than moderately impaired, and she retained the residual functional capacity assessed by the ALJ, which included performing "simple tasks with a reasoning level of three or less." Accordingly, the ALJ provided three clear and convincing reasons supported by substantial evidence for finding Plaintiff's allegations about the severity of her symptoms and limitations less than fully credible.

\\
\\

### III. The ALJ's Evaluation of Dr. Johnson's Opinion

#### A. Dr. Johnson's Opinion

On September 3, 2013, psychiatrist Steven Johnson, M.D., completed a Mental Disorder Questionnaire Form on which he stated the following: Plaintiff's diagnosis is schizoaffective disorder and PTSD (AR 464); Dr. Johnson had treated Plaintiff approximately once per month since August 16, 2011 (AR 464); Plaintiff reports "periods of voices giving her negative messages" and feels others are talking about her (AR 460); Plaintiff reports poor sleep, memory, and concentration, and frequent irritability that impairs her ability to have close relationships with others (AR 460); Plaintiff forgets her mental health appointments and needs reminders and assistance from her boyfriend (AR 460); Plaintiff reports that she does not trust her judgment and decision-making (AR 461); Plaintiff "has poor insight in her mental illness and judgment is poor" (AR 461); Plaintiff "presents as anxious, affect is blunted, depressed and distracted" (AR 462); Plaintiff hears voices "on and off" and has fear of others talking about her or reading her thoughts (AR 462); Plaintiff's concentration is "markedly impaired" (AR 461, 463); Plaintiff minimizes her social interactions due to her paranoia and has few friends (AR 463); and, finally, Plaintiff has had numerous unsuccessful work attempts and "cannot be expected to function in the workplace due to low self-esteem, poor concentration, [and] an inability to complete tasks without making mistakes" (AR 463).

#### B. ALJ's Analysis

As stated above, the ALJ determined that Plaintiff retained the residual functional capacity to perform a full range of light work but: she is limited to "simple tasks with a reasoning level of three or less; she cannot perform jobs requiring hypervigilance; she cannot perform jobs requiring public interaction; and she can occasionally tolerate teamwork." (AR

46.) The ALJ stated that she considered Dr. Johnson's September 3, 2013 opinion, but she did not assign any weight to his opinion or articulate a rationale for rejecting it. (*See generally* AR 49.) The ALJ also did not expressly mention Dr. Johnson's opinion that Plaintiff's concentration is "markedly impaired" (*see generally* AR 49), although Plaintiff's counsel raised this issue before the ALJ at the hearing (AR 97). In contrast to the ALJ's consideration of Dr. Johnson's opinion, the ALJ carefully explained her decision not to credit the June 22, 2015 opinion of Steven Ward, R.N., B.H.N., who opined that that Plaintiff was unable to meet "competitive standards" for carrying out very short and simple instructions and, *inter alia*, maintaining attention for a two hour segment in a regular work setting. (AR 51, 473-44.)

The ALJ assigned great weight to the opinion of the testifying medical expert, Dr. Glassmire, a clinical psychologist who reviewed Plaintiff's medical records, including those provided by Dr. Johnson. (AR 50; *see also id.* at 89-90 (Dr. Glassmire discussing Dr. Johnson's records).) Dr. Glassmire testified that Plaintiff is moderately limited in the area of concentration, persistence, and pace. (AR 85.) He opined that "the workplace restrictions that are supported by the record would include needing [Plaintiff] to do noncomplex, routine tasks. No tasks requiring hypervigilance. No interaction with the public and only occasional tasks requiring teamwork." (AR 85.) As discussed above, these are the restrictions that the ALJ ultimately adopted.

### C. Applicable Law

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ

cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them"). However, the law reserves the ultimate disability determination to the Commissioner, and thus the ALJ generally is not required to articulate a rationale for rejecting a medical professional's conclusion about a claimant's ability to work. *See McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

In the hierarchy of medical opinions, the opinion of a treating source is generally entitled to greater weight than the opinion of doctors who do not treat the claimant because treating sources are "most able to provide a detailed, longitudinal picture" of a claimant's medical impairments and bring a perspective to the medical evidence that cannot be obtained from objective medical findings alone. *See Garrison*, 759 F.3d at 1012; *see also* 20 C.F.R. § 416.927(c)(2). Thus, to reject an uncontradicted opinion of a treating or examining physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

**D. Discussion**

Plaintiff contends that the ALJ erred by rejecting Dr. Johnson's opinion summarily without articulating a substantive basis for discounting it. (*See* Joint Stip. at 5.) Defendant counters that the ALJ "properly considered the statement of Plaintiff's treating psychiatrist Steven Johnson, M.D., in the context of the entire medical record" and "substantial evidence supports [her] conclusion." (Joint Stip. at 9.)

As stated above, the ALJ was not obligated to accept Dr. Johnson's opinion that Plaintiff cannot function in a workplace. *See McLeod*, 640 F.3d at 885. Nevertheless, the ALJ was required to accept, or articulate a substantive basis for discounting, Dr. Johnson's opinion that Plaintiff's concentration is "markedly impaired." *See Garrison*, 759 F.3d at 1012-13 ("an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion"). Accordingly, the ALJ, who did not offer a single reason for discounting Dr. Johnson's opinion nor even acknowledge that she was discounting his opinion, erred.

However, the ALJ's error is harmless. Like the medical expert's review of the objective medical evidence, the Court's own review of the record (*see supra*), reveals that Dr. Johnson's assessment is unsupported by his treatment notes. Most troublingly, his assessment, dated September 3, 2013, cannot be reconciled with the treating notes he wrote less than a month earlier, in which he observed that Plaintiff: "continue[d] to do well on the current meds"; report[ed] "no side effects" and "good sleep"; denied auditory hallucinations and paranoid ideation; and exhibited "grossly intact" cognition and "good" judgment and insight. (AR 445 (August 7, 2013 appointment).) A treating psychiatrist's opinion is properly rejected when that opinion, as here, is conclusory or unsupported by his own treating notes. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (conflict between treating physician's assessment and clinical notes justifies rejection of assessment); *Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings"); *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where physician's records "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"). Accordingly, despite the ALJ's error in failing to explain her decision to

discount Dr. Johnson's opinion regarding Plaintiff's concentration, "the agency's path may reasonably be discerned" and a reversal and remand for further consideration is not warranted. *See Brown-Hunter*, 806 F.3d at 492.

## CONCLUSION

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY

DATED: July 16, 2018

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE